JOHN H. WILKINS, ADM'R FOR OREN A. BALLOU v. HENRY M. FITZHUGH, DEXTER A. BALLOU AND MOLLIE F. BALLOU.

*Trust to pay debts—Real and personal estate—Partnership between maker of trust and trustee.*

Allegations of a disposal of property in trust to sell realty and personalty and apply the proceeds as far as necessary to pay debts, giving the residuum to persons named, are not substantially in harmony with a trust which authorized but did not require a sale, as the former would convert the whole fund into personalty, and the latter would leave the property, until disposed of, subject to its original character.

A party creating such a trust who has entered into partnership with the trustee and dealt with the trust funds as partnership assets whereby losses have accrued cannot thereafter come in as a *cestui que trust* and call the residuary beneficiaries to an account for the balance of the fund turned over to them by the trustee.

*Held*, also, that upon the facts the theory of the bill concerning the transactions in issue was not made out.

Appeal from Bay.   Submitted Jan. 13.   Decided April 12.

BILL to enforce trust.   Complainant appeals.   Dismissal affirmed.

*Hatch & Cooley* for complainant.

*Fatio Colt* and *Hanchett & Stark* for defendants.   When one who creates a trust becomes tenant in common with his trustee and uses the trust property in his business he becomes *trustee de son tort:*   Hill on Trustees (4th Amer. ed.) 173 ;  1 Story's Eq. Jur. § 461; *Docker v. Somes* 2 Myl. & K. 655 ; *Lee v. Sankey* L. R. 15 Eq. 204 : 5 Eng. 808 ; *Coote v. Whittington* L. R. 16 Eq. 534 : 6 Eng. 854 ; *Rackham v. Siddall* 1 Mac. & G. 607 ; *Bennett v. Austin* 81 N. Y. 308 ; if one assuming to act as heir or devisee of a trustee does acts which, if done by the trustee, would constitute a breach of trust, he is liable personally for the consequences: *Vyse v. Foster* L. R. 8 Ch. App. 309 : 4 Eng. 904 ; and this is true as to any one who acts as trustee : *Shaw v. Spencer* 100 Mass. 382; *Woodruff v. Boyden* 3 Abb. N. C. 29 ; complainant's decedent became himself trustee : *Dey v. Dey* 26 N. J. Eq. 182; *Murray v. Lylburn* 2 Johns. Ch. 441; *Oliver v. Piatt* 3 How. 333 ; *Shepherd v. M'Evers* 4 Johns. Ch. 136; *Murray v. Ballou* 1 Johns. Ch. 566 ; *Stewart v. Chadwick* 8 Ia. 463 ; 1 Perry on Trusts § 217 : 2 Story's Eq. Jur. §§ 1255–8 : *School Trustees v. Kirwin* 25 Ill. 73 ; and had no right to mingle the property with his own : *Sparhawk v. Sparhawk* 114 Mass. 356 ; *Mitchell v. Moore* 95 U. S. 587 ; *Blauvelt v. Ackerman* 23 N. J. Eq. 495 ; until an accounting and compensation are made, his estate is entitled to nothing from the remaining trust property : *Norris' Appeal* 71 Penn. St. 126 ; *Stehman's Appeal* 5 id. 413 ; *Walker v. Walker* 9 Wal. 757 ; *McKnight v. Walsh* 24 N. J. Eq. 498.

CAMPBELL, J.   Complainant in December, 1879, was appointed by the probate court of Bay county, on the appli-

cation of Benjamin Whipple, an alleged creditor, to administer on the estate of Oren A. Ballou, a resident of Rhode Island, who died in February, 1877, and on whose estate no other administration had been granted. Oren A. Ballou was the father of Dexter A. Ballou, and is claimed in the bill to have been his creditor in a sum of $122,000 and upwards. The bill is filed to enforce payment of this debt out of property alleged to have been conveyed in trust to Fitzhugh for the express purpose of paying the debts of Dexter, but which as is averred had been conveyed by Fitzhugh to Dexter and Mollie F. Ballou, his wife, before these debts were paid, and therefore before the fund could properly be turned over to them as entitled to such residue as was not needed to pay debts. Although the bill is nominally filed in behalf of all creditors it is not so framed as to bring them in as parties, and the evidence indicates that no other claims are outstanding. The equities are therefore within a narrow compass, and depend on the right of decedent when living, and of complainant now, to seek payment out of this fund.

The bill sets up that the deeds from Fitzhugh to Dexter and wife were made in pursuance of decrees made in suits wherein these defendants, and Benjamin Whipple, and all the heirs at law of Oren A. Ballou were parties, and claims that those decrees do not bind complainant.

The circumstances out of which the trust is claimed to have arisen are substantially these :

Prior to 1866 the Ballous, father and son, were engaged as partners and joint owners in a large lumbering business, owning lands in Bay county and in other counties, with a large amount of personal property and the usual mill and other facilities for such business—the whole estate real and personal being, as nearly as can be gathered from so much of the record as we can legally consider, worth upwards of half a million of dollars. Of this estate, which had been changed and increased from time to time, Dexter Ballou owned three-eighths, which share in the original property of the concern was given him by his father several years before.

In December, 1866, Oren A. Ballou conveyed his remaining five-eighths interest in the assets to Dexter for the nominal price of $155,000, for which he received three promissory notes dated February 25, 1867, and payable on demand with 7 per cent. interest, one of the notes being for $75,000, and the others each for $40,000. It does not appear from the bill or by any legal evidence, that any payments were ever made or demanded on these notes.

Although after this transaction the partnership ceased to exist in fact, Dexter was allowed to continue the use of its name indefinitely, and he carried on business under that name on his own account until some time in 1873, and during that interval dealt more or less in additional lands and business enterprises and bought and sold property in connection with these various enterprises. During this period the bill asserts that a large indebtedness accrued in paper and otherwise, incurred in the firm name used by him, and of this indebtedness there was due to the father $122,000 and upwards, and that he was not able to meet this indebtedness. It is not averred that he was insolvent, and this does not appear to have been the case. There is testimony which is apparently not disputed, that he had become subject to habits of intemperance, and that his relinquishment of business to be presently spoken of, was to enable him to go where he might receive treatment with a view to recover from these habits.

In August, 1873, certain transactions took place out of which the alleged trust originated, and it is necessary to note what averments the bill contains on this subject, as it must furnish the theory on which complainant recovers, if he recovers at all.

The bill sets out by various averments that it was then agreed that Dexter should transfer all his property, real and personal, to Oren, and that Oren should surrender the promissory notes for $155,000 and should convey to Fitzhugh, who was Dexter's father-in-law, an undivided three-eighths of all these assets, " in trust to sell and convey the same, and out of the proceeds thereof, first to pay the indebtedness of

18 MICH.—6

the said Dexter A. Ballou and after paying the indebtedness of the said Dexter A., the remainder to be held in trust for the said Dexter A. Ballou, and Mollie F. Ballou, wife of said Dexter A., one of the defendants hereinafter named."

This is the whole of the contract as set out in the bill, and it is the whole of the contract relied on upon the argument. The averments and the complainant's case are not made to fit any other.

The bill then sets out that conveyances were made according to this agreement, and the notes delivered up to Dexter. The terms of the trust deed are set out *verbatim* by a schedule, which consists of a conveyance of an undivided three-eighths of all lands or interests in lands held by Oren A. Ballou in the State of Michigan, and the same undivided share in all personal property, book accounts, claims, demands and *choses in action* which Oren derived through Dexter's transfer, and the same interest in all rights of action and interests in suits then pending in favor of Dexter or otherwise. The deed is in the usual form until it reaches the *habendum* clause which differs somewhat from the contract set up in the bill in regard to the duty as to sale. This clause is in these words: "To have, etc., in trust, however, to and for the sole purpose of paying the debts and liabilities of the said Dexter A. Ballou, and after the payment of said debts and liabilities, to hold the same for the use and benefit and behoof of said Dexter A. Ballou and Mollie F. Ballou, his wife, and the heirs of the said Dexter A. and Mollie, with full power to sell, dispose of and convey said lands and property as said trustee may deem proper for the uses and purposes aforesaid."

The difference is material in this respect, which not only bears on the purposes of the trust, but upon the duties of the trustee and the character of the fund. As set forth in the contract recited in the bill it created a fund of mixed property which was all to be converted into personalty, and dealt with as such. As set forth in the deed a sale was not imperative and the lands were permitted but not required to be sold. The deed indicates no idea that the debts were

likely to exhaust the assets, or that it was at all clear that any sale would be necessary.

An answer under oath was waived, and no evidence is introduced by complainant to show what the contract was, except the conveyances themselves. The defendants do not admit the contract to have been in some important respects according to the bill.

The bill further avers that the account before mentioned of $122,000 and upwards appeared on the books, and was always claimed by Oren to be due him, and claims it was therefore secured by the trust. This defendants deny, and claim it was cancelled by the arrangement referred to. All of the defendants are disqualified from showing the private dealings between Dexter and his father by reason of the excluding statute concerning matters known to the decedent. But this difficulty cannot enable either party to prevail on matters which he does not prove and on which he has the burden of proof. Matters which are not admitted or proved must be disregarded.

The controversy really is—*first*, whether it was agreed and intended by Oren and Dexter that the balance appearing on the account of $122,000 or thereabouts should continue as a debt to be collected out of the trust created in Fitzhugh; and *second*, whether the subsequent dealings of any of the parties have made any difference. These subsequent transactions are relied on to some extent as showing the real meaning of the arrangement.

In order to determine what the agreement was it is first necessary to see what complainant has shown. The preliminary dealings appear, which show that in August, 1873, the business debts of Dexter, aside from his original purchase notes of $155,000 amounted to a very large sum, which complainant's counsel on the argument insist included beyond the $122,000 to Oren, a sum of more than $175,000 in addition to land-purchase debts. It is not necessary for the present to ascertain the precise balance. The actual value of the assets at that time is in much dispute, but it is quite clear that all the parties then considered them as exceeding all debts of every description.

The only evidence on the part of complainants to show what the contract was, consists of the deeds to and from Oren A. Ballou, and statements from the books of account. No entry was made on the books at this time or afterwards of the terms of the settlement, and no balances were struck, but the continuation of the business by Oren and Fitzhugh treated the business as a continuing one. To this it is not shown that Dexter was an immediate party, and nothing can be drawn from the books, therefore, which would aid very much in the interpretation of the bargain. The little testimony in the case which is admissible shows very clearly that when Dexter conveyed all his property to his father he retained no further control over the books, which passed with the assets.

It cannot be claimed that the deeds, which, it must be assumed, and is not disputed, were made in furtherance of the contract, necessarily show what the contract was, or that their execution and the return of the $155,000 notes were all that the contract covered. It is at least possible that other considerations and dealings existed, and the fact that the law closes the mouth of the only living person familiar with the facts, does not raise any presumption that there were no other facts. The question whether the remaining debt of Dexter to his father was cancelled is not determined by the deeds, because their consideration is not set out in such a way as to show its character, and it is not determined by leaving the account open on the books, because Dexter did not thereafter handle the books.

But the probabilities may be partially measured by the facts which no one disputes. It appears that Dexter and his father had always been on terms of family intimacy, and that the father had always shown a continued interest in his welfare. It appears that in closing up this transaction in August, 1873, neither party deemed it necessary to take a written agreement or vouchers from the other. And there is no reason whatever for imagining that either would try to defraud the other, or that there was any fraud intended against third persons.

If the complainant's theory is true, the transaction, stripped of extraneous matter which throws no light on it, would be this: A son, owing his father a sum of about $280,000, and owing other persons about $175,000, conveys absolutely and unqualifiedly all of his property, as fully as it would pass by a general assignment, and in an amount deemed adequate to pay all his debts and more. Instead of treating this transfer as payment in full, the father releases the sum of $155,000, and retains a claim for $122,000 and upwards. He then transfers to a trustee three-eighths of the assets to pay debts amounting to about $300,000, and keeps for himself the larger portion, or five-eighths, in payment of but a trifle if any over half the sum which he has deemed adequately secured by three-eighths. If we could regard this as the real transaction, it would have been a very gross fraud against the son, and against the creditors. He would clear more than a quarter of a million dollars by the bargain, if the trust property was sufficient to pay all the debts it was designed to pay. If, on the other hand, the sum of $155,000 was a fair price for the five-eighths, the remaining three-eighths would only be worth $93,000, or less than 30 per cent. of the debts secured by the trust, and only about three-fourths of his own remaining debt included in it. None of the theories in the case square with this supposition.

There is a further difficulty which makes it incredible that the contract could have been as claimed. The assets transferred to Oren A. Ballou consisted chiefly of lands and tangible personal property, in addition to a much smaller amount of accounts and other things in action. If the arrangement agreed on was that Oren should retain five-eighths of this property, and that three-eighths should be turned over to an independent trust, involving no partnership or other joint management, it is incredible that undivided interests should have been allowed to continue, or rather should have been created, either in personalty or in things in action, or if created should be accompanied by no power of management or disposition which would enable

the trustee to deal with them or to dispose of them to any practical advantage. It is contrary to all business experience for men to bring in others as joint owners in chattels or securities with them, who are to continue strangers in their management, and still more strange to allow as many men joint interests to be thus created as there might be claims or parcels of property sold by the trustee. Such an arrangement by complainant would be as perilous to his own claim secured by the trust as to that of the other creditors, and would render it far less likely that the debts would be paid, or any surplus remain for Dexter and his wife, than if the property had been conveyed in distinct and entire items.

If the transaction was not as set up in the bill, we are not called on to speculate what else it was. We cannot think it was as there set forth, because it seems entirely unlikely that Oren A. Ballou either meant to defraud Dexter, or to make arrangements in regard to his own unpaid debts which were so utterly unfitted to secure their payment. If he desired to secure his own claim, and his son also was willing to secure it, the probabilities are all in favor of his having paid it out of the property conveyed to him, and not in favor of his omitting to pay it when he could, in order to create an awkward security for it out of property that he already owned and controlled.

But the subsequent immediate dealings with the fund cannot be lost sight of. In the absence of other proof of an agreement, the conduct of parties in relation to what it covers is strong evidence of what it really is. Immediately after Fitzhugh became trustee a partnership arrangement was made between him and Oren A. Ballou for continuing the business precisely as it had been done before, not even changing or balancing the books, but acting as if it had always existed. If this had been done with Dexter and not with Fitzhugh, then no one would have any difficulty in understanding the rights of the two partners, except as to the continuation of the personal debt, which there might be some doubt about. One of the first results of this new partnership was the payment of all Dexter's outstanding debts

to third parties, which left no one concerned in the further ownership of the funds except Dexter and his wife, and Oren A. Ballou. If these were consenting, it is clear that the trust was practically relinquished, and Fitzhugh a mere representative of Dexter and Mollie Ballou for their share in the partnership business. There was nothing remaining to be done under the original trust powers so far as Oren was concerned, for his combined action with Fitzhugh had rendered this impossible. If on the other hand Fitzhugh had no right to risk the fund in this way, while Dexter and his wife might properly object, yet Oren could not complain. He was estopped from insisting on what he had himself rendered impossible. By procuring Fitzhugh to use these funds in the partnership he has rendered it impossible to know just how the trust would have come out if it had been let alone, and it would not be equitable to aid a party in enforcing a trust who has himself repudiated or destroyed it. His administrator is in no better plight than he would have been if living, and there is nothing in the record to indicate that he during his life set up any claim under the trust. The inferences are all the other way.

Without referring to the other facts which are certainly very peculiar, and would bear some comment, we think that the case of complainant is not made out, and that the equities seem to be decidedly against it. We shall not attempt to guess at what the death of Oren has made it impossible to clear up, but we agree with the court below that complainant has no ground of recovery.

The decree must be affirmed with costs.

GRAVES, C. J. and MARSTON, J. concurred.
COOLEY, J. did not sit in this case.